## Mumma *v.* Mumma, Appellant.

*Practice, C. P.—Statements of claim—Amendments—Statute of limitations—New cause of action.*

1. An amendment to pleadings which introduces a new cause of action, or brings in a new party, or changes the capacity in which defendant is sued, will not be allowed, after the statute of limitations has run.

2. A statement of claim filed July 27, 1909, alleged that on April 1, 1905, defendant was indebted to plaintiff in the sum of $6,800 for money loaned; that on said date, defendant paid plaintiff $3,800 on account of the indebtedness, leaving due thereon, $3,000, with interest. In an amended statement filed January 24, 1911, with leave of court, plaintiff alleged that during the year 1905, defendant was indebted to plaintiff in the sum of $6,800, that defendant induced plaintiff to accept and receive in part payment certain shares of stock of the value of $3,800, and that defendant agreed with plaintiff that if these stocks were not good, he would make them good. At the trial, it appeared that plaintiff received the stock in August, 1904, and that the promise to make the stock good was made at or about the same time. The jury found a verdict for plaintiff upon which judgment was entered. *Held,* that the amendment set up a new cause of action barred by the statute of limitations, and the judgment was reversed.

Mr. Chief Justice FELL and Mr. Justice BROWN dissent.

Argued May 18, 1914. Appeal, No. 14, Jan. T., 1912, by defendant, from judgment of C. P., Lancaster Co., Aug. T., 1909, No. 15, on verdict for plaintiff in case of John N. Mumma v. Samuel N. Mumma. Before FELL, C. J., BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Assumpsit for money loaned. Before LANDIS, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff and judgment thereon. Defendant appealed.

*Errors assigned* were in permitting plaintiff to amend his statement of claim and the judgment of the court.

*John E. Malone,* for appellant.

*W. U. Hensel,* for appellee.

OPINION BY MR. JUSTICE POTTER, July 1, 1914:

But one question is raised in this appeal: Did the court below err in permitting an amended statement to be filed? In the original statement filed July 27, 1909, it was alleged that on April 1, 1905, the defendant was indebted to the plaintiff in the sum of $6,800 for money loaned. That upon that date the defendant paid to the plaintiff the sum of $3,800 on account of this indebtedness, leaving due thereon the sum of $3,000 with interest. In an amended statement which plaintiff was permitted to file on January 24, 1911, it was averred that during the year 1905, when the defendant was indebted to the plaintiff in the sum of $6,800, the defendant induced plaintiff to accept and receive from him certain shares of mining stock of the value of $3,000, and that defendant agreed with plaintiff that if these stocks were not good, he would make them good. When the case came to trial the first time, this amendment had not been filed, and in its absence the trial court refused to allow the plaintiff to recover upon a promise which was not declared upon. Notwithstanding defendant's objection, plaintiff was permitted to amend, and, defendant pleading surprise, the case was continued. When it came up for trial again, the issue submitted to the jury was whether there was any such promise to make good the mining stocks as was alleged by the plaintiff. The court said to the jury: "The sole question therefore which is submitted to you is, whether or not the defendant agreed to guarantee and make good this stock or its value." The jury found that such a promise was made, but defendant points out that it was made more than six years prior to the filing of the amended statement, in which, for the first time, the promise was set forth.

At the trial the plaintiff testified that he received the

mining stocks from his brother the defendant in 1904, apparently upon August 8th, and that this promise to make the stocks good was made at or about the same time. It is apparent therefore that when the amended statement was filed, more than six years had elapsed from the time the alleged promise was made by defendant to make good any loss on the mining stocks. If therefore, under the amended statement, the cause of action was based upon the promise to make good the stocks, it would come within the bar of the statute of limitations.

The question whether anything was due upon the original contract was not submitted to the jury, as the court below was of the opinion that if plaintiff was entitled to recover at all, it was upon the guarantee of the stock. This view was undoubtedly correct. The indebtedness of $6,800 was paid in 1904 by taking a note for $3,800, and accepting the stocks for the balance, or $3,000. The note was afterwards paid, and is out of the case. The stocks and defendant's relation to them are still in question. Upon defendant's promise to make them good, this suit, under the amended statement, was brought. But for the fact that the statute of limitations had run against defendant's promise, when the amendment was filed, the defendant would undoubtedly be liable. That the original indebtedness, and the promise to guarantee the stocks taken in part payment, constitute two separate and distinct causes of action, there can be no doubt. When the money which plaintiff originally loaned to defendant was repaid to him, no matter whether by note or in stocks, that was an end of the original cause of action, based upon the loan of money. A new and different cause arose, upon the promise to make good any loss which should be suffered on the stock which he then purchased from the defendant. It was upon this new promise that plaintiff based his right to recover; and whether or not such promise was made, was the issue presented to the jury. They found that

the promise was made, but the record shows that it must have been at a time more than six years before the amendment was presented. If so, the court erred in permitting the amendment to be filed. That an amendment which introduces a new cause of action cannot be made after the statute of limitations has become a bar is so well settled that authority for the proposition need hardly be cited. In Wright v. Eureka Tempered Copper Co., 206 Pa. 274, we said, through the present Chief Justice (p. 276) : "Statutes of amendment are liberally construed to give effect to their clearly defined intent to prevent a defeat of justice through a mere mistake as to parties or the form of action. Amendments however will not be allowed to the prejudice of the other party, where the statute of limitations has run, by introducing a new cause of action or bringing in a new party, or changing the capacity in which he is sued." We are clear that the amendment allowed in this case presented a new cause of action, and it is manifest that it was filed after the statute of limitations had run against the promise upon which the right to recover was based.

The first, second and third assignments of error are sustained, and the judgment is reversed.

Mr. Chief Justice FELL and Mr. Justice BROWN dissent.