Russell, Appellant, *v.* Richard C. Remmey Son Company.

Argued November 21, 1935.

Before Keller, P. J., Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Frank A. Chalmers,* for appellant.

*John W. Lord, Jr.,* with him *Frederick C. Fuges,* for appellee.

Opinion by James, J., March 9, 1936:

Plaintiff sued defendant corporation in assumpsit for breach of contract in failing to order 2,000 tons of kaolin. The case was tried before a judge without a jury who found for the defendant. Plaintiff's motions for a new trial and judgment n. o. v. having been refused, he now appeals from the judgment entered upon the judge's findings.

On April 18, 1928, James B. Russell and his wife, together with H. E. Simpers and his wife, in consideration of the sum of $50, gave and granted an option to the defendant corporation to purchase all the eastern half of the "Moffitt Mill Farm, situate in Cecil County, Maryland," for the sum of $3,000, which was to be paid as follows: $500 upon the acceptance of the said option, and the balance to be paid at the rate of $600 per year and to be secured by a first mortgage bearing interest at the rate of 6% per annum; the life of said option to be for six months from this date, but no longer, and in the event the said party of the second part purchases said land upon the terms aforesaid, the said parties of the first part to contract and agree to convey the same to the said party of the second part, free, clear and discharged of all liens and encumbrances . . . . . . . The agreement further provided: " . . . . . . in the event the said party of the second part purchases the eastern half of said farm, upon the terms as aforesaid, that they will and do hereby contract and agree to and with the said James B. Russell, to give him a contract to mine for them 2,000 tons of Kaolin at $1.25 per ton, F. O. B. cars, mine, same to be delivered as required, but the whole to be ordered and paid for within the

space of two years from the date of the conveyance of said land." The option money of $50 was paid but no other payments were made until June 29, 1929, when the purchase price was paid and the deed delivered. Commencing on April 20, 1928, plaintiff mined for the defendant until March 30, 1929, 2,415 tons, for which he was paid. Plaintiff now claims loss suffered by reason of defendant's failure to call upon him to mine 2,000 tons after the date of the conveyance.

Defendant's defense, as set forth in Paragraph 4 of its affidavit of defense, is as follows: "4. Defendant denies that it became the duty of defendant to order from James B. Russell, within the space of two years from the conveyance of the Moffitt Mill Farm, June 29th, 1929, 2,000 tons of Kaolin and to pay for the same at the rate of $1.25 per ton. Defendant denies that defendant has failed and refused to order the said Kaolin from plaintiff and denies that defendant has been many times requested so to do. Plaintiff [defendant] avers that immediately after the execution of the agreement, dated April 18th, 1928, copy of which is annexed to Plaintiff's Statement of Claim and marked Exhibit 'A,' defendant exercised the option to purchase as therein provided and plaintiff thereupon undertook to clear said tract of existing liens and incumbrances, but because of the inability of plaintiff to so clear the land of the liens and incumbrances existing against it, plaintiff agreed that defendant should take immediate possession of said tract of ground and exercise all the rights and incidents of an owner thereof and defendant thereupon took possession of said tract of ground. Defendant thereupon contracted with plaintiff that plaintiff should mine for defendant, 2,000 tons of Kaolin at $1.25 a ton as provided for in the agreement of April 18th, 1928, and in discharge of defendant's covenant as set forth in said agreement. Plaintiff thereupon began the mining of the Kaolin from said tract of ground and

from time to time shipped the Kaolin so mined to the defendant as set forth in the list of shipments hereto annexed which aggregate in excess of 2,000 tons, for which defendant paid plaintiff at the rate of $1.25 per ton and which plaintiff accepted from defendant in full performance of defendant's covenants as set forth in said agreement of April 18th, 1928."

In its opinion, refusing motions for new trial and judgment n. o. v., the court stated: "It is not difficult to reconstruct the actual occurrences involved in this dispute, although they were not clearly established at the trial. The contract was obviously entered into in contemplation of an early conveyance; the restriction of the option to six months shows this. The defendant desired title to the land, so as to be assured of a supply of kaolin, but it wanted a clear and unencumbered title. The plaintiff wanted the assurance of at least a certain amount of mining work for the next two years. After the agreement was executed, the parties considered the land as already belonging to the defendant, and the defendant thereafter had the plaintiff mine for it more than the 2,000 tons stipulated. The defendant discovered that due to encumbrances against the land, it would have no protection if it made the contemplated instalment payments to the plaintiff. Hence, it never exercised its option. Subsequently, it purchased the land outright, by making payment in full at the time of the settlement. This was the true situation, as constructed from the evidence." The findings of a trial judge have the same binding effect as facts found by a jury and if the record contains testimony justifying its findings, we cannot set it aside: Athens Nat. Bank v. Ridgebury Twp., 303 Pa. 479, 154 A. 791. Our examination of the record establishes that it contains testimony upon which the findings of the judge were based.

We cannot agree with the legal conclusion of the court that the conveyance was not under the option, as

defendant admitted that he had exercised the option. It was for the identical land and the same consideration as provided in the written agreement; but the failure of the defendant to carry out the agreement in strict accordance with its terms was, for whatever cause, waived by the plaintiff. Under the facts as found by the court, whether we regard the conveyance of the land in furtherance of defendant's exercise of the option or under an oral modification of its terms, the kaolin was mined as contemplated by its terms. To permit plaintiff to take advantage of his own delay in completing title to recover for the loss in mining 2,000 additional tons, which was all that was contemplated in the original agreement, is not in accord with its intent as plaintiff's testimony clearly showed that the consideration of $3,000 for the land was induced by the contract to load the 2,000 tons, so that he would realize more than the consideration stated. As the record now stands, he received the full consideration of $3,000 and also mined more tonnage than the agreement called for. Clearly if plaintiff could waive the terms of the agreement as to payment of the consideration, both as to manner and time, he could also waive the term of the mining covenant, which was part of the consideration, so as to anticipate the date mining was to commence, to wit: from the date of the conveyance to the date defendant entered into possession. These facts were found by the trial judge and we are bound by his findings.

Judgment affirmed.