# Wagoner *v.* Philadelphia, Appellant.

*Municipalities—Contract of employment—Wages—Estoppel.*

An ordinance of a city providing for the employment of workmen at per diem wages will not prevent the city, or any of its departments from discontinuing the payment of a full day's wages for a half day's work.

Where a city has discontinued the practice of paying workmen a full day's wages for Saturday half holidays, as provided by an ordinance, the workmen are estopped from complaining of such reduction where it appears that they accepted payment of the reduced rate of wages every two weeks for more than two years, signed the pay roll in receipt of these wages, without protest at the time, and without objection made to the department by which they were employed.

Argued Jan. 17, 1906.    Appeal, No. 200, Jan. T., 1906, by defendant, from judgment of C. P. No. 5, Phila. Co., March T.,

1905, No. 377, on verdict for plaintiff in case of Charles S. Wagoner, Assignee of Wilmer W. Slack et al., v. City of Philadelphia.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Reversed.

Assumpsit for wages.   Before DAVIS, J.

The facts are stated in the opinion of the Supreme Court.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $3,112.39.   Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Robert Brannan,* assistant city solicitor, with him *John L. Kinsey,* city solicitor, for appellant.—An ordinance granting per diem employees of a city a half holiday with a provision for a full day's pay is not in the nature of a contract between the city and such employees : Com. v. Bacon, 6 Serg. & Rawle, 320 ; Barker v. Pittsburg, 4 Pa. 49 ; McCormick v. Fayette County, 150 Pa. 190.

Plaintiff's assignors are estopped from claiming back wages by their own action in receiving their pay regularly and signing the pay roll for a period of more than two years without protest or demand for the wages they now claim to be due : Love v. Mayor, etc., of Jersey City, 40 N. J. L. 456 ; Stagg v. Ins. Co., 77 U. S. 589.

*Ernest L. Tustin,* with him *Charles S. Wesley,* for appellee.

OPINION BY MR. JUSTICE POTTER, May 24, 1906 :

The plaintiff in this case holds by assignment the claims of certain bricklayers, who were employed on a per diem basis by the Bureau of Water, Department of Public Works of the city of Philadelphia.   By virtue of an ordinance of the city dated June 29, 1894, these bricklayers, in common with other employees of the city, were granted a half holiday on Saturdays, without any deduction being made therefor from the full day's pay.   After January 1, 1903, the department in which they were employed continued to allow the bricklayers the half

holiday on Saturdays, but discontinued the practice of paying them for the time during which they were not at work. The reason for the action of the department in this respect, seems to be found in the appropriation ordinance for 1903 and 1904, which provided that the union rate of wages should be paid to bricklayers. This was somewhat in excess of the prior rate of wages. The present action is brought to recover the amount which, it is claimed, should have been paid to the bricklayers for the time included in the Saturday half holidays from January 1, 1903, to the date of the commencement of the suit. It appears from the evidence, that the bricklayers accepted the union rate of wages for a period of more than two years, and that during this time were paid regularly every two weeks, and signed the pay roll in receipt of these wages, without protest at the time, and without objection made to the department by which they were employed. The trial judge seems to have regarded the ordinance of 1894 as a contract obligation upon the part of the city to pay the per diem employees for the time included in the half holidays. With this view we do not agree. We cannot regard an ordinance fixing salaries as being in the nature of a contract between the employees and the city. These bricklayers cannot be regarded as public officers. They are nothing more than workers engaged from day to day, and their employment might of course have been terminated at any time. But even if it had been permanent, or if they could have been classed as public officers, the ordinance providing for their compensation would not partake of the nature of a contract. It was so ruled by this court in Com. v. Bacon, 6 S. & R. 322. It was there said, " Services rendered by public officers do not in this particular partake of the nature of contracts, nor have they the remotest affinity thereto. As to stipulated allowance, the allowance whether annual, per diem, or particular fees for particular services, depends on the will of the law makers; and this whether it be the legislature of the state, or a municipal body empowered to make laws for the government of a corporation. This has been the universal construction." The same principle has been recognized and followed in Barker v. Pittsburg, 4 Pa. 49, and in McCormick v. Fayette County, 150 Pa. 190. There was therefore no contractual relation between the city and these per diem employees which would prevent

the city, or any of its departments, from discontinuing the payment of a full day's wages for a half day's work.

Counsel for appellee evidently regards the ordinance of 1894 as binding upon the director of the department, and as compulsory upon him to allow a full day's pay for half a day's work. The measure was undoubtedly intended for the guidance of the directors of the departments, and for any disregard of its provisions they might be called to account by the proper authority; but the effect of the passage of the ordinance was certainly not to vest in the employees, any contract rights as to the rates of compensation for their labor. The allowance was made to the bricklayers for the Saturday half holidays, until the change in the rate of wages was made, under the appropriation ordinance of 1903, and thereafter the union rate of wages was paid, and the allowance for an extra half day's pay on Saturdays was stopped. It may well be, that the director was correct in his construction of the later ordinance as showing an intention to discontinue the former allowance for the Saturday holiday. But at any rate the men accepted the situation, in so far at least that no protest was made to the director of the department by whom they were employed.

The trial judge submitted to the determination of the jury the question of whether or not the fact that these employees did thus accept without objection their pay every two weeks in accordance with the schedule prepared by the paymaster, constituted a waiver on their part of any claim against the city for more pay. In this submission we think he erred. It would be most unreasonable to permit an employee to receive his pay without objection or dissent, from time to time at a fixed rate, for a considerable period, and thereafter present a claim for additional compensation. If the amount received was not satisfactory the employees should have quit work, or raised an objection then and there; so that the department would have been put upon notice, and would have exercised its option of meeting the demand, or finding someone else to do the work for the rate of pay deemed sufficient. We can only look upon the continuance in employment, as an expression of satisfaction by the workmen with the amount of the compensation; and the receipt of payments every two weeks throughout the whole period, is to be deemed an estoppel against the assertion of

any claim for additional compensation at this time.    Under the circumstances, continuance in the employment of the department from day to day can only be regarded as acquiescence in the rate of wages fixed by the department.    The fact that this was the union rate of wages shows that it was at least equivalent to the prevailing market rate at the time.

The first assignment of error is sustained, and the judgment is reversed.